UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ALLIANZ GLOBAL RISKS US INSURANCE CO.,

                    Plaintiff,

                    -against-

LATAM CARGO USA, LLC; LAN CARGO S.A.;
LATAM AIRLINE GROUP; GLOBAL CARGA
INT'L LTDA; GEM AIR CARGO SERVICE CO.,
LTD.; and CATHAY PACIFIC AIRWAYS, LTD.,

                    Defendants.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

16-CV-6217 (NGG) (ST)

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Allianz Global Risks US Insurance Company ("Allianz"), a subrogated insurance company, brings this breach-of-contract action against Defendants Latam Cargo USA, LLC; LAN Cargo S.A. ("LAN"); Latam Airline Group ("Latam"); Global Carga Int'l, Ltda ("Global"); Gem Air Cargo Service Co., Ltd. ("Gem"); and Cathay Pacific Airways Ltd. ("Cathay"), to recover for the spoliation of a shipment of cherries from Chile to Taiwan. (2d Am. Compl. ("SAC") (Dkt. 25).) Cathay, Latam, and LAN now move to dismiss Plaintiff's Second Amended Complaint (the "Complaint") for lack of subject-matter jurisdiction and failure to state a claim. (See Cathay Mot. to Dismiss ("Cathay Mot.") (Dkt. 31); LAN and Latam Mot. to Join in Cathay Mot. to Dismiss ("LAN-Latam Mot.") (Dkt. 34).) For the reasons that follow, Defendants' motions to dismiss are DENIED.

**I.    BACKGROUND**

    **A.    Facts**

This case arises from the spoliation of 1,120 cases of fresh cherries somewhere between Santiago, Chile, and Taiwan. According to the Complaint, on December 6, 2014, Defendants

1

received the shipment of cherries in Santiago for shipment to Taoyuan International Airport, Taiwan. (SAC ¶ 14.) Global issued an air waybill identifying the shipper as Servicios Agricolas Oppenheimer Chile Ltd. ("Oppenheimer"), the consignee as Taiwan Fullbloom International Ltd. ("Taiwan Fullbloom"), and "notify" party as Gem. (Id. ¶ 16; Air Waybill No. 045-SCL87707421, Magali Decl. Ex. B (Dkt. 31-2 at ECF p.13) at ECF p.14.) The cherries, which were identified as perishable and supposed to be kept cool, were to be transported by LAN from Santiago to Miami and thence by Cathay to Taiwan, where they were scheduled to arrive by the evening of December 9, 2014. (SAC ¶¶ 15-17.)

As it turned out, the cherries took a more circuitous route to their ultimate destination. Rather than heading to Miami, the cherries were carried first to Buenos Aires, Argentina; from Buenos Aires to Sao Paulo, Brazil; and from Sao Paulo to JFK International Airport ("JFK") in New York City, where they were stored "for a substantial period of time to the detriment of the fruit." (Id. ¶¶ 18-20.) Cathay, having contracted with LAN and Latam, took custody of the shipment at JFK and carried the cherries from JFK to Hong Kong and thence to Taipei, Taiwan. (Id. ¶ 21.) When the cherries arrived in Taipei, they were "found to be a total loss due to decay and mildew." (Id. ¶ 22.)

### B. The Complaint and Procedural History

On November 8, 2016, Allianz, Oppenheimer, and Taiwan Fullbloom commenced this action, which alleges that Defendants breached their obligations under the air waybill. (Compl. (Dkt. 1).) Shortly after filing the operative complaint, Oppenheimer and Taiwan Fullbloom voluntarily dismissed their claims, leaving only Allianz remaining as a plaintiff. (Notice of Voluntary Dismissal (Dkt. 26).)

Some defendants now move to dismiss. Cathay moves to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Cathay Mot.; Mem. in Supp. of Mot. to Dismiss ("Cathay Mem.") (Dkt. 31-1).) Latam and LAN also move to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and LAN also moves to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (LAN-Latam Mot.) Allianz opposes both motions to dismiss. (Pl. Mem. in Opp'n to Mots. to Dismiss ("Pl. Mem.") (Dkt. 36).)

## II. LEGAL STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to test the court's subject-matter jurisdiction by means of a motion to dismiss. In reviewing a motion to dismiss under Rule 12(b)(1), courts must "accept as true all material factual allegations in the complaint," Shipping Fin. Serv. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998), but refrain from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]," APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that [jurisdiction] exists." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112-13 (2d Cir. 2007) (per curiam). A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

3

When considering a Rule 12(b)(6) motion, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences in favor of the plaintiff. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005). "[W]hatever documents may properly be considered in connection with the Rule 12(b)(6) motion, the bottom-line principle is that once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007) (internal quotation marks and citation omitted).

## III. DISCUSSION

The court first addresses Defendants' arguments concerning subject-matter jurisdiction, turning next to the question of whether Plaintiff has stated a claim.

### A.   Motions to Dismiss Pursuant to Rule 12(b)(1)

As noted above, Defendants first argue that the court lacks subject-matter jurisdiction to hear this case. (Cathay Mem.; LAN-Latam Mem.) According to Defendants, Plaintiff's claims are governed by an international treaty known as the Warsaw Convention, as amended by the Hague Protocol (the "Warsaw Convention"), which applies to the international carriage by air of passengers, baggage, and, of key relevance in this case, cargo. Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), reprinted in note following 49 U.S.C.A. § 40105 (the "Warsaw Convention"). According to Defendants, if the Warsaw Convention applies, the court lacks subject-matter

4

"treaty jurisdiction." Per the terms of the treaty, suits governed by the treaty can only be brought in one of four jurisdictions: (1) the domicile of the carrier; (2) the carrier's principal place of business; (3) where the carrier has a place of business through which the contract was made; and (4) the place of destination of the shipment. Id., art. 28(1). Defendants argue that, in this case, none of these locations is the United States, and, thus, that this court lacks subject-matter jurisdiction.

Plaintiff does not dispute Defendants' argument that if the Warsaw Convention applies, this court lacks subject-matter jurisdiction. (Cf. Pl. Mem.) Similarly, Defendants do not argue that if the Warsaw Convention does not apply, this court would lack subject-matter jurisdiction. If the Warsaw Convention does not apply, this court would have subject-matter jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000. Additionally, venue would be appropriate under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the complaint occurred in this district. Thus, the only dispute is whether the Warsaw Convention applies in this case. The court agrees with Plaintiff that it does not.

The Warsaw Convention applies "to all international transportation of . . . goods performed by aircraft for reward," provided that "the place of departure and the place of destination, whether or not there be a break in the carriage or a transshipment, are situated . . . within the territories of two High Contracting Parties. . . ." Warsaw Convention, art. 1(2). A "High Contracting Party" is "a State whose ratification of or adherence to the Convention has become effective and whose denunciation thereof has not become effective." Id., art. 40A(1). Further, when the Convention does apply, the Convention's terms provide the exclusive basis for recovery." See Warsaw Convention, art. 24 ("In cases [that involve cargo being damaged], any

5

action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention."); see also Comm. Union Ins. Co. v. Alitalia Airlines, S.p.A., 347 F.3d 448, 456-57 (2d Cir. 2003). Thus, the Warsaw Convention applies if (1) the cargo was shipped internationally by aircraft; (2) the damage to the goods in question occurred during carriage by air, within the meaning of the Convention;[1] and (3) at the time of the shipment, both the country from which the goods were shipped and the country of destination were signatories to the Convention.

Here, there is no dispute that the cargo was shipped internationally by aircraft; that the damage to the goods in question occurred during carriage by air; or that at the time of shipment, the country from which the goods were shipped (Chile) was a signatory to the Warsaw Convention. Nor is there a dispute that the People's Republic of China was a signatory to the Warsaw Convention. There is a dispute, however, as to whether, at the time of the shipment, the country of destination (Taiwan) was a signatory to the Warsaw Convention by virtue of China's accession to the Convention.

Defendants contend that because China acceded to the Warsaw Convention, so did Taiwan. (Cathay Mem. at 6; LAN-Latam. Mem. at 2.) China's instrument of accession to the Warsaw Convention states "The Government of the People's Republic of China is the sole legal government representing the Chinese People. The [Warsaw] Convention to which the Government of the People's Republic of China adhere shall of course apply to the entire Chinese territory including Taiwan." Warsaw Convention, Reference 10. Defendants thus argue that, as

---

[1] The Warsaw Convention applies not only when the baggage and goods are literally in the air, but also when they are "in charge of the carrier, whether in an airport or on board an aircraft." Warsaw Convention, art. 18, § 2; see also Victoria Sales Corp. v. Emery Air Freight, Inc., 917 F.2d 705, 706-08 (2d Cir. 1990) (holding that the Warsaw Convention does not extend to storage at a warehouse outside the boundaries of JFK).

6

a result of China's accession to the Warsaw Convention, Taiwan is a signatory to the Convention, and thus that the shipment in question falls within the scope of the Convention.

Defendants are mistaken, however, about Taiwan being bound by the Warsaw convention. Although the Second Circuit does not appear to have ruled on the issue, the majority of case law supports the position that Taiwan is not bound by the Warsaw Convention.

In Atlantic Mutual Insurance Co. v. Northwest Airlines, 796 F. Supp. 1188 (E.D. Wis. 1992), the District Court for the Eastern District of Wisconsin held that Taiwan was part of China, and thus that China's status as a High Contracting Party to the Convention rendered Taiwan bound by the Convention. Id. at 1190-91. This ruling, however, was questioned by the Bankruptcy Court for the Northern District of Illinois, which stated that "[t]he reasoning in Atlantic Mutual was flawed. . . . The United States's recognition of mainland China and derecognition of Taiwan has not had the effect in any legal or practical sense of accepting the PRC's territorial claim to Taiwan." Schwinn Plan Comm. v. AFS Cycle & Co., Ltd. (In re Schwinn Bicycle Co.), 190 B.R. 599, 611 (Bankr. N.D. Ill. 1995). Further, the Schwinn Plan Committee court held that "the question of what government is representative of a foreign state is one to be determined by the Executive Branch and is beyond the purview of judicial review. By analogy, it would be beyond a court's authority to decide . . . that Taiwan has tacitly been recognized by the United States as a party to any treaty signed by the PRC." Id. at 612.

Taiwan's status with regard to the Warsaw Convention then was brought before the Ninth Circuit, which in Mingtai Fire & Marine Insurance Co. v. UPS, 177 F.3d 1142 (9th Cir. 1999) ("Mingtai Fire"), followed in the footsteps of Schwinn Plan Committee. The Ninth Circuit stated that "the Constitution commits to the Executive Branch alone the authority to recognize, and to withdraw recognition from, foreign regimes." Id. at 1145. The court also then addressed the

7

Taiwan Relations Act, and stated that "despite the absence of official relations, the United States continues to deal separately with Taiwan," and the Taiwan Relations Act "gave no indication that existing or future agreements with the newly recognized China would be binding upon Taiwan." Id. at 1146. Indeed, the Executive Branch had expressly stated its position, which was entitled to substantial deference, that the Warsaw Convention did not bind Taiwan. Id. at 1146-47. Thus, the Ninth Circuit concluded that the Warsaw Convention does not apply to Taiwan.

Other courts in the Ninth Circuit have followed Mingtai Fire without criticism. See, e.g., Am. IC Exch., Inc. v. Fed. Express Corp., 185 F.3d 865, 1999 WL 391000, at *1 (9th Cir. 1999) (memorandum disposition) ("Taiwan is not bound by the Warsaw Convention . . . ."); In re Extradition of Coe, 261 F. Supp. 2d 1203, 1209 (C.D. Cal. 2003); In re Air Crash at Taipei, 211 F.R.D. 374, 380 (C.D. Cal 2002) (holding that Taiwan is not party to the International Civil Aviation Organization, and citing Mingtai Fire's holding on the Warsaw Convention as precedent).[2]

Because the Second Circuit has not addressed Taiwan's status under the Warsaw Convention, this court is guided by the reasoning of other courts that have addressed the issue. The court finds persuasive the Ninth Circuit's thorough discussion and explanation of why Taiwan is not bound by the Warsaw Convention. Mingtai Fire, 177 F.3d at 1145-47. The court knows of no reason to believe that the Executive Branch has changed its position that Taiwan is not bound by China's accession to the Warsaw Convention. See Br. for the United States as Amicus Curiae, Mingtai Fire, 177 F.3d at 142 (No. 98-15088), available at https://www.state.gov/documents/organization/65731.pdf. In addition, the court notes that

---

[2] The court in Lee v. China Airlines, Ltd., 669 F. Supp. 979 (C.D. Cal. 1987), seems to have assumed that Taiwan adhered to the Warsaw Convention but did not explain the basis for this assumption, which, in any event, was dicta. Id. at 984.

8

Taiwan has not considered itself bound by the Warsaw convention. See Coordination Council for N. Am. Affairs v. Nw. Airlines, 891 F. Supp. 4, 8 (D.D.C. 1995).

For the foregoing reasons, in this court's view, Taiwan is not bound by the Warsaw Convention. Because Taiwan was the final destination of the shipment at issue in this case, the Warsaw Convention therefore does not apply to the shipment at issue in this case. Accordingly, Plaintiff did not need to bring this action only in one of the four locations enumerated in the Warsaw Convention. The court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 to hear this case, and Defendants' motions to dismiss the claims against them pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure are denied.

**B.    Motions to Dismiss Pursuant to Rule 12(b)(6)**

Defendants Cathay and LAN argue that the claims against them should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Cathay Mem.; LAN-Latam Mem.) LAN argues that it was not in privity of contract with Taiwan Fullbloom (or, thus, with Plaintiff), and thus that Plaintiff cannot assert a breach-of-contract claim against it. (LAN-Latam Mem. at 3.) Similarly, Cathay argues that it was not in privity of contract with Plaintiff or Taiwan Fullbloom, that privity of contract is required for a plaintiff to bring an action for damages for breach of contract, and thus that Plaintiff's breach-of-contract cause of action should be dismissed for failure to state a claim. (Cathay Mem. at 8-9.)

Cathay and LAN are both mistaken. Plaintiff can bring a breach-of-contract claim against Cathay and against LAN.

Cathay was a secondary carrier of the goods in this case, having contracted with LAN and Latam. The Second Circuit has held that "[i]t is well-established that a shipper may sue a secondary carrier of its goods for any loss or damage that may be caused by those carriers."

9

Nippon Fire & Marine Ins. Co. v. Skyway Freight Sys., 235 F.3d 53, 61 (2d Cir. 2000). An action brought by a shipper against a secondary carrier can have its basis in contract, and "the theory [is] that the shipper is either a disclosed or undisclosed principal of its agent, the primary carrier." Id. In this action, Plaintiff is the principal and LAN and Latam served as its agents. Thus, any contract that LAN or Latam entered into with Cathay regarding Plaintiff's goods was done with LAN or Latam acting as Plaintiff's agent. Accordingly, Plaintiff can indeed bring a claim for breach of contract against Cathay. Thus, Plaintiff's claims against Cathay should not be dismissed pursuant to Rule 12(b)(6).

LAN's arguments for why Plaintiff's claims against it should be dismissed for failure to state a claim fail as well. According to the complaint, the parties to the air waybill were Taiwan Fullbloom and Global "as agent for LAN and LATAM Airlines." (SAC ¶¶ 8, 16.) LAN argues, however, that the claims against it should be dismissed because, with respect to the air waybill at issue, Global was only an agent for Latam, not for LAN. (LAN-Latam Mem. at 2.) According to LAN, the air waybill contains the prefix "045," which refers to "LATAM transportation documents." (Id.) In support of its position that Global did not sign the contract as an agent for LAN, LAN also points to the declaration of Maria Elena Enriquez, an in-house lawyer for Latam, who states that the "045" prefix indicates that the air waybill is a Latam transportation document. (Enriquez Decl. (Dkt. 30-1) at ¶ 9.)

This affidavit is not properly before the court. While, on a Rule 12(b)(6) motion, the court may consider documents outside the pleadings if those documents are "integral" to the complaint, "an affidavit of a defendant containing a statement of facts contradicting those in the Complaint is not such a document." Howard v. Town of Bethel, 481 F. Supp. 2d 295, 308 (S.D.N.Y. 2007). Even if the court were to consider this affidavit, the result would be the same,

10

because it is not clear why the fact that the shipment was assigned Latam's airline prefix, if true, necessarily implies that Global acted solely as an agent for Latam, and not also for LAN, in connection with the shipment. This factual issue is better raised on summary judgment or at trial.

For the foregoing reasons, Cathay's and LAN's motions to dismiss the complaint for failure to state a claim are denied.

## IV. CONCLUSION

Cathay's motion to dismiss (Dkt. 31) and Latam's and LAN's motion to dismiss (Dkt. 34) are DENIED.

SO ORDERED.

Dated: Brooklyn, New York
March 31, 2018

NICHOLAS G. GARAUFIS
United States District Judge

11